# Exhibit A

Fax Server          8/8/2017 10:51:07 AM   PAGE   2/002   Fax Server
RECEIVED  08/08/2017 10:48AM

1  RONALD J. SHINGLER, ESQ. (C.S.B. #142089)
   Email: ronshingler@shinglerlaw.com
2  RICHARD A. BRODY, ESQ. (C.S.B. #100379)
   Email: rickbrody@shinglerlaw.com
3  SHINGLER LAW
   3220 Lone Tree Way, Suite 100
4  Antioch, CA 94509
   Telephone:  (925) 757-7020
5  Facsimile:  (925) 757-3260
6
7  Attorneys for Plaintiffs

FILED BY FAX
ALAMEDA COUNTY
August 02, 2017
CLERK OF
THE SUPERIOR COURT
By Melanie Williams, Deputy
CASE NUMBER:
RG17870516

8          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF ALAMEDA

10                 UNLIMITED JURISDICTION

11

12  JOHN NEWTON JONES and CONNIE          Case No.:
    JONES,
13
                                          COMPLAINT FOR PERSONAL
14        Plaintiffs,                      INJURIES; NEGLIGENCE; STRICT
                                          PRODUCTS LIABILITY; FAILURE TO
15                                         WARN; BREACH OF IMPLIED
         vs.                               WARRANTIES; FRAUD; CIVIL
16                                         CONSPIRACY; ENTERPRISE
    A. W. CHESTERTON COMPANY; ALLIED       LIABILITY; PREMISES LIABILITY;
17  FLUID PRODUCTS CORP. FKA ALLIED        NEGLIGENT HIRING/NEGLIGENT
    PACKING & SUPPLY, INC.; AMERICAN       RETENTION; VESSEL OWNER
18  PRESIDENT LINES, LTD.; CARRIER         NEGLIGENCE; LOSS OF
    CORPORATION; CBS CORPORATION, A        CONSORTIUM; PUNITIVE DAMAGES
19  DELAWARE CORPORATION, FKA
    VIACOM INC., SUCCESSOR BY MERGER
20  TO CBS CORPORATION, A
    PENNSYLVANIA CORPORATION, FKA         (Filed via Facsimile)
21  WESTINGHOUSE ELECTRIC
    CORPORATION; ELLIOTT COMPANY;
22  GENERAL ELECTRIC COMPANY;
    GEORGIA-PACIFIC LLC; GOULDS
23  PUMPS, INCORPORATED; IMO
    INDUSTRIES INC., INDIVIDUALLY AND
24  AS PARENT, ALTER EGO, FORMERLY
    KNOWN AS, DOING BUSINESS AS, AND
25  AS SUCCESSOR IN INTEREST TO IMO
    DELAVAL INC. AND DE LAVAL STEAM
26  TURBINE COMPANY AND DE LAVAL
27
28

TURBINE CALIFORNIA INC.;
INGERSOLL-RAND COMPANY; ITT
GOULDS PUMPS, INC., INDIVIDUALLY
AND AS SUCCESSOR IN INTEREST TO
GOULDS PUMPS INC.; J. T. THORPE &
SON, INC.; JOHNSON CONTROLS, INC.,
INDIVIDUALLY AND AS SUCCESSOR IN
INTEREST TO YORK ICE MACHINERY
CORPORATION AND YORK
INTERNATIONAL; LAMONS GASKET
COMPANY, FORMERLY KNOWN AS
POWER ENGINEERING & EQUIPMENT
CO., INDIVIDUALLY AND AS
SUCCESSOR IN INTEREST TO LAMONS
METAL GASKET CO.; MATSON
NAVIGATION COMPANY, INC.; PACIFIC
GAS AND ELECTRIC COMPANY;
PARKER-HANNIFIN CORPORATION,
INDIVIDUALLY AND AS SUCCESSOR IN
INTEREST TO PARKER SEAL AND
SACOMO SIERRA AND SACOMO
MANUFACTURING CO.; SYD
CARPENTER, MARINE CONTRACTOR,
INC.; THE GOODYEAR TIRE & RUBBER
COMPANY; THOMAS DEE ENGINEERING
CO., INC.; TRIPLE A MACHINE SHOP,
INC.; WARREN PUMPS LLC,
INDIVIDUALLY AND AS SUCCESSOR IN
INTEREST TO WARREN PUMPS INC.; and
FIRST DOE through FOUR HUNDREDTH
DOE, inclusive,

Defendants.

Plaintiffs JOHN NEWTON JONES and CONNIE JONES complains of defendants,

and each of them, and alleges:

## FIRST CAUSE OF ACTION
### (Negligence)

1.     Plaintiff JOHN NEWTON JONES brings this action on his own behalf and

hereinafter is referred to as "plaintiff." Plaintiff knows of no other parties who should be

named as a plaintiff herein.

2.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 200, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each of said fictitiously named defendants are, through their negligence, responsible or liable in some manner for the occurrences herein alleged, and that the injuries herein alleged were the direct and legal result of said negligence.

3.      At all times mentioned in this complaint each of the defendants was the agent and employee of each of the remaining defendants, and by their actions as alleged in this complaint each defendant was acting within the course and scope of this agency and employment, and each defendant has ratified and approved the acts of the remaining defendants.

4.      A. W. CHESTERTON COMPANY; ALLIED FLUID PRODUCTS CORP. FKA ALLIED PACKING & SUPPLY, INC.; AMERICAN PRESIDENT LINES, LTD.; CARRIER CORPORATION; CBS CORPORATION, A DELAWARE CORPORATION, FKA VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, FKA WESTINGHOUSE ELECTRIC CORPORATION; ELLIOTT COMPANY; GENERAL ELECTRIC COMPANY; GEORGIA-PACIFIC LLC; GOULDS PUMPS, INCORPORATED; IMO INDUSTRIES INC., INDIVIDUALLY AND AS PARENT, ALTER EGO, FORMERLY KNOWN AS, DOING BUSINESS AS, AND AS SUCCESSOR IN INTEREST TO IMO DELAVAL INC. AND DE LAVAL STEAM TURBINE COMPANY AND DE LAVAL TURBINE CALIFORNIA INC.; INGERSOLL-RAND COMPANY; ITT GOULDS PUMPS, INC.,

1  INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO GOULDS PUMPS INC.; J.

2  T. THORPE & SON, INC.; JOHNSON CONTROLS, INC., INDIVIDUALLY AND AS

3  SUCCESSOR IN INTEREST TO YORK ICE MACHINERY CORPORATION AND

4  YORK INTERNATIONAL; LAMONS GASKET COMPANY, FORMERLY KNOWN AS

5  POWER ENGINEERING & EQUIPMENT CO., INDIVIDUALLY AND AS SUCCESSOR

6  IN INTEREST TO LAMONS METAL GASKET CO.; MATSON NAVIGATION

7  COMPANY, INC.; PACIFIC GAS AND ELECTRIC COMPANY; PARKER-HANNIFIN

8

9  CORPORATION, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO PARKER

10 SEAL AND SACOMO SIERRA AND SACOMO MANUFACTURING CO.; SYD

11 CARPENTER, MARINE CONTRACTOR, INC.; THE GOODYEAR TIRE & RUBBER

12 COMPANY; THOMAS DEE ENGINEERING CO., INC.; TRIPLE A MACHINE SHOP,

13 INC.; WARREN PUMPS LLC, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST

14

15 TO WARREN PUMPS INC.; and FIRST DOE through FOUR HUNDREDTH DOE,

16 inclusive, are at all times herein mentioned, and were corporations or other business entities

17 organized and existing under the laws of the state of California and/or qualified to do

18 business in this state.

19

20        ALLIED FLUID PRODUCTS CORP., is sued herein not only in its own capacity

21 but also as formerly known as ALLIED PACKING & SUPPLY, INC.

22        CBS CORPORATION, A DELAWARE CORPORATION, is sued herein not only

23 in its own capacity but formerly known as VIACOM INC., SUCCESSOR BY MERGER

24 TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, formerly known as

25 WESTINGHOUSE ELECTRIC CORPORATION.

26

27 ///

28

1   Defendant Elliott Company was plaintiff's employer during times relevant herein
2   and, but for the dual capacity doctrine, adopted in California in 1952, would be able to
3   shield itself from tort liability by asserting the exclusive remedy of worker's
4   compensation. In this case, the Elliot Company acted in the dual capacity of employer and
5   manufacturer. The Elliot Company was a designer, manufacturer, seller, supplier, jobber,
6   repairer, maintainer and owner of turbines and related equipment which contained and were
7   insulated with asbestos-containing products. These turbines, and related equipment, were
8   sold to the general public for use by the general public; they were not designed for, or
9   manufactured for use by, Elliot Company employees only. Plaintiff was regularly and
10  routinely exposed to asbestos fibers released from the asbestos-containing products in and
11  on the Elliot Turbines, and related equipment, which had been sold to the general public.
12
13      ITT GOULDS PUMPS, INC., is sued herein not only in its own capacity but also as
14  successor in interest to GOULDS PUMPS INC.
15      IMO INDUSTRIES INC., is sued herein not only in its own capacity but also as
16  parent, alter ego, formerly known as, doing business as, and as successor in interest to IMO
17
18  DELAVAL INC. AND DE LAVAL STEAM TURBINE COMPANY AND DE LAVAL
19  TURBINE CALIFORNIA INC.
20
21      JOHNSON CONTROLS, INC., is sued herein not only in its own capacity but also
22  as successor in interest to YORK ICE MACHINERY CORPORATION AND YORK
23  INTERNATIONAL.
24
25      LAMONS GASKET COMPANY, is sued herein not only in its own capacity but
26  also as formerly known as POWER ENGINEERING & EQUIPMENT CO.,
27  INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO LAMONS METAL
28

GASKET CO.

PARKER-HANNIFIN CORPORATION, is sued herein not only in its own capacity but also as successor in interest to PARKER SEAL AND SACOMO SIERRA AND SACOMO MANUFACTURING CO.

WARREN PUMPS LLC, is sued herein not only in its own capacity but also as successor in interest to WARREN PUMPS INC.

5.    The defendants, and each of them, acting through their agents, servants or employees, cause, and have caused in the past, asbestos, certain asbestos-containing products and asbestos-containing insulation, fireproofing, friction, felt, gasket, packing and building materials to be placed on the market and in the stream of interstate commerce with the result that said products and materials came into use by plaintiff and those working in close proximity to plaintiff at relevant times herein.

6. JOHN NEWTON JONES was exposed to asbestos during the times, and in the manner, set forth below.

**A. United States Navy**                    **(1961-1979)**

Plaintiff served in the United States Navy from 1961 through 1979. He went through basic training in San Diego, California. He entered the Navy as an apprentice fireman and was honorably discharged as machinist's mate chief.

Plaintiff does not recall servicing, repairing, removing or replacing a motor or turbine, or any other product, manufactured by General Electric or Westinghouse Electric while serving in the United States Navy and therefore does not allege, and in fact disclaims, any exposure to asbestos from any product manufactured by these two defendants while serving in the Navy. Moreover, plaintiff specifically waives any claim of exposure to

asbestos from any product manufactured or supplied by General Electric and Westinghouse Electric while he was serving in the United States Navy.

        1.   *USS HAVEN (AH-12)*            (1961-1962)

     Plaintiff served aboard the *USS HAVEN (AH-12)* from 1961 through 1962. The *USS HAVEN* was a hospital ship which was moored at the Long Beach Naval Station in Long Beach, California. It had Babcock & Wilcox boilers and a General Electric turbine. These were not operational because the ship was stationary. It was connected to land-based power sources. As a fireman apprentice, and then fireman, plaintiff stood watch at various locations on this ship. He also painted areas within the ship and performed clean-up duties. On a routine and regular basis, he repaired leaky steam lines and hot water lines. These lines were insulated with asbestos-containing pipecovering. He regularly and routinely, throughout his time aboard this ship, cut through and removed asbestos-containing pipecovering to repair, or replace, leaky pipes. Further, on a routine and regular basis, plaintiff removed asbestos-containing flange gaskets which connected the pipes end-to-end; these flanges also connected the pipelines to shipboard equipment. During this work, he regularly and routinely removed and replaced asbestos-containing flange gaskets. Through these and other duties he performed, plaintiff was regularly and routinely exposed to asbestos throughout the time period he served aboard this ship.

     Exposure to asbestos while serving aboard the *USS HAVEN* was a substantial factor which contributed to plaintiff's development of asbestos-related lung cancer. Plaintiff does not allege and specifically disclaims any exposure to asbestos at while serving aboard the *USS Haven* from products made by, or actions of, defendants CBS CORPORATION, A DELAWARE CORPORATION, FKA VIACOM INC., SUCCESSOR BY MERGER TO

1   CBS CORPORATION, A PENNSYLVANIA CORPORATION, FKA WESTINGHOUSE

2   ELECTRIC CORPORATION and GENERAL ELECTRIC COMPANY.

3         2.  *USS CORAL SEA (CV-43)*              **(1962-1968)**

4         Plaintiff served aboard the *USS CORAL SEA (CV-43)* from 1962 through 1968. The

5   *USS CORAL SEA* was an aircraft carrier.  He joined the ship in Japan.  It was homeported at

6

7   the Alameda Naval Air Station.

8         Plaintiff rose to the rank of Machinist's Mate Second Class while serving aboard the

9   *USS CORAL SEA.*  He worked in all four of the engine rooms and boiler rooms.  Each

10  engine room had a Westinghouse turbine.  In all, there were twelve Babcock & Wilcox

11
    boilers on this ship.
12

13        As a Machinist's Mate plaintiff regularly and routinely maintained, repaired and

14  replaced all manner of equipment aboard the *USS CORAL SEA* including, but not limited to,

15  pumps, valves, pipes, turbines, steam lines, hot water lines, boilers and gauges.  Moreover,

16
    as part of his duties, he routinely and regularly removed and replaced asbestos-containing
17
    pipecovering, block, cement, gaskets, packing and cloth.  He performed these duties, and
18
19  was regularly and routinely exposed to asbestos fiber, throughout his tenure aboard the *USS*

20  *CORAL SEA.*

21        Moreover, plaintiff was further exposed to asbestos when he participated in two
22
    major overhauls at the Hunter's Point Naval Shipyard in San Francisco.  Plaintiff lived
23
    aboard ship during these overhauls and he stood watch in various areas of the ship including
24
25  the engine and boiler spaces.  The overhauls were performed by shipyard employees and

26  outside contractors.  While aboard ship during these overhauls plaintiff was routinely and
27
    regularly exposed to asbestos fibers released from products, that were being removed and
28

installed by myriad shipyard and outside contractor employees, including, but not limited to, pipecovering, block, cement, gaskets, packing, cloth, blankets, pumps, valves, boilers, turbines, and refractory materials.

Exposure to asbestos while serving aboard the *USS CORAL SEA* was a substantial factor which contributed to plaintiff's development of asbestos-related lung cancer. Plaintiff does not allege and specifically disclaims any exposure to asbestos at while serving aboard the *USS CORAL SEA* from products made by, or actions of, defendants CBS CORPORATION, A DELAWARE CORPORATION, FKA VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, FKA WESTINGHOUSE ELECTRIC CORPORATION and GENERAL ELECTRIC COMPANY.

### 3.  WHITING FIELD, FLORIDA        (1968-1970)

From 1968 through 1970, plaintiff was assigned to shore duty at the Whiting Field Naval Air Station near Milton, Florida. He worked in the fuel division. He pumped nitrogen, and other gases, into bottle and tank. Plaintiff does not allege exposure to asbestos at this site.

### 4.  *USS ORISKANY (CV-34)*        (1970-1974)

Plaintiff served aboard the *USS ORISKANY (CV-34)* from 1970 through 1974. The *USS ORISKANY* was an aircraft carrier. It was homeported at the Alameda Naval Air Station.

Plaintiff rose to the rank of Machinist's Mate Chief while serving aboard the *USS ORISKANY.* He worked in all areas of the ship including the engine and boiler rooms.

///

As a Machinist's Mate Chief plaintiff regularly and routinely maintained, repaired and replaced all manner of equipment aboard the *USS ORISKANY*; he also supervised, and was present, when others maintained, repaired and replaced all manner of equipment aboard this ship. Plaintiff was assigned to a division that was responsible for maintaining the air conditioning and refrigeration units aboard the *USS ORISKANY*. Most, but not all, of the insulation he encountered was made of cork. On a routine and regular basis, he and his crew, as part of their duties, had to remove and replace asbestos-containing pipecovering, block, cement, gaskets, packing and cloth. He and his crew regularly and routinely were exposed to asbestos when they installed, removed, repaired, replaced and maintained refrigeration and HVAC equipment that had asbestos-containing gaskets, packing and seals. He performed these duties and was present when his crew performed these duties, and consequently he was regularly and routinely exposed to asbestos fiber, throughout his tenure aboard the *USS ORISKANY*.

Moreover, plaintiff was further exposed to asbestos aboard the *USS ORISKANY* when he participated in two or three major overhauls at the Hunter's Point Naval Shipyard in San Francisco. Plaintiff lived aboard ship during these overhauls and he stood watch in various areas of the ship including the engine and boiler spaces. The overhauls were performed by shipyard employees and outside contractors. While aboard ship during these overhauls, plaintiff was routinely and regularly exposed to asbestos fibers released from products that were being removed and installed by myriad shipyard and outside contractor employees, including, but not limited to, pipecovering, block, cement, gaskets, packing, cloth, blankets, pumps, valves, boilers, turbines, and refractory materials.

///

Plaintiff was present aboard the *USS ORISKANY* when Triple A performed repairs aboard this vessel. The first of these took place in June 1973 and September 1973. Triple A secured the services of J.T. Thorpe & Son, Inc. to perform refractory work aboard the *USS ORISKANY*. The second of these took place in the 1973 to 1974 time frame when Dee Engineering did several refractory jobs aboard the *USS ORISKANY* Triple A. Plaintiff was exposed to asbestos fibers released into the engine and boiler spaces of the *USS ORISKANY* when he stood watch and performed his other duties aboard this ship, a portion of which is attributable to the work performed by J.T. Thorpe & Son and Dee Engineering at Triple A.

Exposure to asbestos while serving aboard the *USS ORISKANY* was a substantial factor which contributed to plaintiff's development of asbestos-related lung cancer. Plaintiff does not allege and specifically disclaims any exposure to asbestos while serving aboard the *USS ORISKANY* from products made by, or actions of, defendants CBS CORPORATION, A DELAWARE CORPORATION, FKA VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, FKA WESTINGHOUSE ELECTRIC CORPORATION and GENERAL ELECTRIC COMPANY.

### 5.   *USS PROTEUS (AS-19)*                    (1975-1975)

Plaintiff served aboard the *USS PROTEUS (AS-19)* from 1974 through 1975. The *USS PROTEUS* was a submarine tender. Plaintiff joined the *USS PROTEUS* in Guam. He was in charge of the nitrogen plant and assisted supplying submarines with oxygen. Exposure to asbestos is not claimed aboard this vessel.

### 6.   ALAMEDA NAVAL AIR STATION   (1975-1977)

Plaintiff was stationed at the Alameda Naval Air Station from 1975 through 1977. He was assigned to the Fleet Mag Department. He worked in a land-based shop repairing

and overhauling pumps and valves that could be used and re-used aboard naval vessels. On a daily basis, he routinely and regularly removed and replaced asbestos-containing gaskets and packing. To remove the gaskets, he routinely and regularly scraped the gasket material and removed the remnants with a pneumatically-powered wire brush. He routinely and regularly installed both pre-cut and hand-made gaskets. He routinely and regularly removed asbestos-containing packing and replaced it. While performing these duties he was exposed to asbestos fibers released from these products.

Exposure to asbestos while working at the Alameda Naval Air Station was a substantial factor which contributed to plaintiff's development of asbestos-related lung cancer. Plaintiff does not allege and specifically disclaims any exposure to asbestos at while serving the Alameda Air Station from products made by, or actions of, defendants CBS CORPORATION, A DELAWARE CORPORATION, FKA VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, FKA WESTINGHOUSE ELECTRIC CORPORATION and GENERAL ELECTRIC COMPANY.

### 7. *USS WICHITA (AOR-1)*                      (1977-1979)

Plaintiff served aboard the *USS WICHITA (AOR-1)* from 1977 through 1979. The *USS WICHITA* was a multipurpose replenishment ship; it provided supplies for combat ships. The *USS WICHITA* was homeported at the Alameda Naval Air Station.

Plaintiff was in charge of the fuels division on this ship. He helped refuel vessels at sea. Though not assigned to the engine or boiler rooms, he did stand watches in those spaces on a routine and regular basis, and in this way he exposed to the asbestos fiber which contaminated those space.

Moreover, plaintiff was further exposed to asbestos aboard the *USS WICHITA* when he participated in one or two major overhauls at the Triple A Shipyard at Hunter's Point in San Francisco. Plaintiff lived aboard ship during these overhauls and he stood watch in various areas of the ship including the engine and boiler spaces. The overhauls were performed by shipyard employees and outside contractors. While aboard ship during these overhauls plaintiff was routinely and regularly exposed to asbestos fibers released from products, that were being removed and installed by myriad shipyard and outside contractor employees, including, but not limited to, pipecovering, block, cement, gaskets, packing, cloth, blankets, pumps, valves, boilers, turbines, and refractory materials.

Exposure to asbestos while serving aboard the *USS WICHITA* was a substantial factor which contributed to plaintiff's development of asbestos-related lung cancer. Plaintiff does not allege and specifically disclaims any exposure to asbestos at while serving aboard the *USS WICHITA* from products made by, or actions of, defendants CBS CORPORATION, A DELAWARE CORPORATION, FKA VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, FKA WESTINGHOUSE ELECTRIC CORPORATION and GENERAL ELECTRIC COMPANY.

**B. Southwest Marine                              (1979-1993)**

Plaintiff worked for Southwest Marine in San Francisco from 1979 through 1993. He hired on as machinist and rose to the title of machinist superintendent for the yard. Southwest Marine was originally located at Pier 28 along the Embarcadero in San Francisco. In the late 1980's it moved to Pier 70, which was previously occupied by the Bethlehem Shipyard and Todd Shipyard. On a routine and regular basis, he did hands-on work as a marine machinist, and supervised the work of both outside and inside machinists. He

personally performed, and supervised the performance of, repair, maintenance and

replacement of marine valves, pumps and other equipment.   He routinely and regular

performed, and supervised the performance of, these duties both aboard ship and in the shop.

He mostly worked on civilian merchant ships, including but not limited to, ships

owned and operated by Matson and American President Lines.  On a more limited basis, he

performed these same duties aboard navy ships, including, but not limited to, the *USS*

*CORAL SEA, USS WICHITA*, USS *SHASTA*, USS *ORISKANY, USS ROANOKE, USS*

*WABASH, USS KALEAKALA, USS MAUNA KEA, USS KILAUEA, USS SACRAMENTO,*

*USS BRYCE CANYON, USS MIDWAY, USS ENTERPRISE* and *USS KISKA.*

Throughout his tenure with Southwest Marine plaintiff was routinely and regularly

exposed to asbestos from asbestos packing and gaskets which he, and those under his

supervision, removed and replaced in conjunction with their work repairing, replacing, and

maintaining marine valves and pumps.  Moreover, while aboard ship during these overhauls

plaintiff was routinely and regularly exposed to asbestos fibers released from products, that

were being removed and installed by myriad shipyard and outside contractor employees

including, but not limited to, pipecovering, block, cement, gaskets, packing, cloth, blankets,

pumps, valves, boilers, turbines, and refractory materials.

Exposure to asbestos while serving while working at Southwest Marine was a

substantial factor which contributed to plaintiff's development of asbestos-related lung

cancer.  Plaintiff does not allege and specifically disclaims any exposure to asbestos while

working at Southwest Marine from products made by, or actions of, defendants CBS

CORPORATION, A DELAWARE CORPORATION, FKA VIACOM INC., SUCCESSOR

BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, FKA

WESTINGHOUSE ELECTRIC CORPORATION and GENERAL ELECTRIC
COMPANY.

### C. Elliott Company                                    (1993-2006)

Plaintiff worked as a project manager for the Elliott Company from 1993 through
2006, inclusive. He traveled around the United States, and the world, to consult with
various clients for projects which utilized the Elliott Company's turbines and machinery.
He also consulted about, and came into contact with, turbines and other machinery made by
other companies, including but not limited to, Westinghouse and General Electric. All of his
work for the Elliott Company was land-based. None of his work for the Elliott Company
was aboard ship. Plaintiff does not allege, and in fact disclaims, any exposure to asbestos on
land owned by the federal government. Plaintiff does not allege, and in fact disclaims, any
exposure to asbestos while performing work for the federal government or any entity
associated with the federal government.

Plaintiff consulted for the Elliott Company at chemical plants, refineries, power
plants and other industrial facilities. He helped develop the projects at these facilities which
concerned turbines and related equipment. These projects included repair and maintenance
projects, new construction, and disassembly and demolition of facilities which had turbines
and related equipment. On a routine and regular basis, throughout his tenure with the Elliott
Company, he was exposed to asbestos fibers which were released from pipecovering, block,
cement, gaskets, packing, cloth, and refractory materials. These, and other, asbestos-
containing products were used to insulate and seal myriad equipment, including, but not
limited to, turbines, boilers, steam lines, hot water lines, and fire boxes. Plaintiff performed
these duties at several locations including, but not limited to, the facilities below.

| 1. | Georgia Pacific Mill | Fort Brag, CA | 1993 |
|----|----------------------|---------------|------|
| 2. | UCSF Power Plant | San Francisco, CA | 1993 |
| 3. | PG&E Power Plant | The Geysers | 1995 |
| 4. | City of Raton Public Service | Raton, NM | 1996-7 |
| 5. | Power Plant | Chowchilla, CA | 1997 |
| 6. | Conoco Refining | Commerce City, CO | 1998 |
| 7. | Sierra Pacific Power Valmy Station | Valmy, NV | 1998 |
| 8. | Sierra Pacific Ft. Churchill Station | Yerington, NV | 1998 |
| 9. | Chinese Petroleum Corp. | Lyn Yuan, Kaohsiung China | 1998-9 |
| 10. | LG & E Westmoreland | Altavista, VA | 1999 |
| 11. | Kennecott Copper | Magna, Utah | 1999 |
| 12. | Adirondack Resources | Hudson Falls, NY | 2000 |
| 13. | PCS Phosphates | White Springs, FL | 2000 |
| 14. | City of Coffeeville | Coffeeville, KS | 2001 |
| 15. | Madera Power | Firebaugh, CA | 2001 |
| 16. | Crestor Hammond | Indiana | 2001 |
| 17. | Adirondack Resources | Hudson Falls | 2002 |
| 18. | Sithe Energy | San Diego, CA | 2002 |
| 19. | Sierra Pacific Power Valmy Station | Valmy NV | 2002 |
| 20. | State of Rhode Island | Cranston, RI | 2002-3 |
| 21. | SE Missouri State | Girardeau, MO | 2003 |
| 22. | Sierra Pacific Power Valmy Station | Valmy NV | 2003 |
| 23. | Monetnay Power | Poughkeepsie, NY | 2003 |
| 24. | Covanta Power | Bainbridge, PA | 2003 |
| 25. | Wheeling Pittsburg Steel | S. Steubenville, OH | 2003 |
| 26. | Middlesex Generating Co. | Sayerville, NJ | 2004 |
| 27. | EcoElectra | Peneulas, Puerto Rico | 2004 |
| 28. | Diamond Walnut | Stockton, CA | 2004 |
| 29. | Chevron Refinery | Richmond, CA | 2005 |
| 30. | Cal Energy | Calipartia, CA | 2007 |
| 31. | Cal Energy | Calipartia, CA | 2011 |
| 32. | Hydro Agri Ammoina Plant | Trinidad Tobago | Unknown |
| 33. | Wheelabrator Power Plant | Anderson, CA | Unknown |
| 34. | Nova Core Chemicals | Joffre, Canada | Unknown |

Plaintiff's exposure to asbestos while working for the Elliott Company, including his

exposure to asbestos while working on and around Elliott turbines and related equipment

which had been manufactured, supplied, and installed prior to plaintiff's employment with

the Elliott Company, were substantial factors which contributed to his development of

asbestos-related lung cancer.

///

7.      During the course and scope of his employment plaintiff continually worked with and in close proximity to asbestos and asbestos-containing products. He routinely and regularly applied and removed asbestos and asbestos-containing products, and was continually exposed to asbestos fibers which were released from asbestos and asbestos-containing products which were mined, milled, manufactured, processed, imported, converted, compounded, applied, installed, designed, specified, inspected, approved, supplied, distributed and sold by defendants, and each of them.

8.      Plaintiff's exposure to asbestos was the direct and legal cause of his development and consequent diagnosis of asbestos-related lung cancer. Further, his exposure to asbestos was the cause of other illnesses and disabilities whose relationship to asbestos is as yet unknown to plaintiff herein.

9.      At all times relevant herein, defendants and each of them, owed a duty of due care which required them to exercise ordinary care to protect against an unreasonable risk of harm. This duty was owed to plaintiff.

10.     Plaintiff's development of asbestos-related lung cancer and related conditions is the direct and legal result of the conduct of the defendants, and each of them, in that they negligently and carelessly researched, tested or failed to test, manufactured, designed, specified, developed, labeled, advertised, marketed, warranted, inspected, fabricated, modified, applied, installed, distributed and supplied asbestos and asbestos-containing products. Defendants, and each of them, without any adequate warning to the consumer or user, produced, sold, and otherwise put into the stream of interstate commerce the foregoing materials which said defendants and each of them knew, or in the exercise of ordinary care should have known, were deleterious, poisonous and highly harmful to plaintiff's body,

lungs, respiratory system, skin and health. Further, defendants and each of them knew, or through the exercise of ordinary care should have known, that exposure to asbestos is, and at all times relevant herein has been, associated with terminal and incurable diseases which have caused and continue to cause death.

11.   During the time period when plaintiff was exposed to asbestos in the manner described above, he had no knowledge that said exposure placed him at risk for developing the diseases described herein and therefore had no opportunity, nor can he be charged with a duty or breach of duty, to protect himself against said harmful asbestos exposure. Plaintiff had no knowledge that the alleged conduct, misconduct and culpability of defendants, and each of them, were actionable at law when they were committed and cannot be charged with knowledge or inquiry thereof.

12.   The asbestos-related lung cancer that afflicts plaintiff developed at a microscopic and undetectable level over an extended period of time, without noticeable trauma, and was therefore unknown and unknowable to plaintiff until his physicians diagnosed him with asbestos-related lung cancer in March 2017. Plaintiff has also been diagnosed with bilateral pleural plaques. This action is being brought within the applicable statutory time period. Prior to his diagnosis, plaintiff did not know, nor through the exercise of reasonable diligence could he have known, that his disease and related conditions were caused by his exposure to the defendant's asbestos and asbestos-containing products.

13.   As a direct and legal result of the conduct of the defendants, and each of them, defendant developed a disease known and designated as asbestos-related lung cancer, and as a further direct and legal result it has been and continues to be necessary for plaintiff to retain the services of physicians, hospitals, hospice, and other health care professionals to

diagnose, treat, and provide palliative care for plaintiff as he approaches the end of his life. As a further direct and legal result of the conduct of the defendants, and each of them, it will be necessary for plaintiff to retain the services of the health care profession in the future for an indeterminable period of time. Plaintiff does not yet know the full extent of treatment that will be required nor the reasonable value of medical services rendered or to be rendered to plaintiff herein and therefore requests leave to amend this complaint when that sum is determined.

14.     As a direct and legal result of the conduct of the defendants, and each of them, and of plaintiff's diagnosis of asbestos-related lung cancer, plaintiff has been unable to follow his normal or any gainful occupation for certain periods preceding and following his diagnosis, and plaintiff will remain disabled for an indeterminable time. Plaintiff has incurred, and will incur, loss of income, wages, pensions, earning potential, profits and commissions, and other pecuniary losses. Plaintiff does not know the amount of said past and future losses and therefore requests leave to amend this complaint when that sum is determined.

15.     As a further direct and legal result of the negligence of defendants, and each of them, and plaintiff's diagnosis of asbestos-related lung cancer, plaintiff has endured and continues to endure unrelenting physical and emotional pain and suffering, emotional distress, mental distress, mental anguish, fear, nervousness, grief, anxiety, worry, humiliation and indignity, the full nature and extent of which are presently unknown to plaintiff, and for which plaintiff has incurred general damages in excess of $50,000.00.

///

///

16.     As a further direct and legal result of the conduct of defendants, and each of them, plaintiff has been damaged to his health, strength, and activity in an amount in excess of $50,000.00 in addition to special damages alleged herein.

17.     The foregoing acts of the defendants, and each of them, were done wantonly, willfully, oppressively, and in conscious disregard of the safety of plaintiff herein, by the defendants, and each of them, in that the defendants, and each of them, prior to and at the time of sale of the aforementioned products to plaintiff's employer or to others who in turn sold to plaintiff's employers, knew that the foregoing asbestos fibers released from said products during the foreseeable operations of applying and removing same, were dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said products, nor placed a sufficient warning on the said product or package thereof regarding said dangerous nature, despite knowing that said products would be used by plaintiff and others who had no knowledge of the dangerous and hazardous nature thereof, and therefore plaintiff is entitled to an award of punitive damages.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Strict Products Liability)

AS AND FOR A SECOND CAUSE OF ACTION, plaintiff JOHN NEWTON JONES complains of the defendants, and each of them, and alleges:

18.     Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though fully set forth herein, each and every allegation contained in the First Cause of Action herein, except allegations pertaining to negligence.

///

19.    At all times mentioned herein defendants, and each of them, during the ordinary course of business, mined, milled, manufactured, imported, supplied, distributed, delivered, packaged, labeled, advertised, sold, marketed, distributed, delivered, installed, applied and otherwise introduced into the stream of commerce asbestos and asbestos-containing products which were defective due to their design, manufacture, sufficiency or lack of warning, and/or failure to meet ordinary user or consumer expectations of safety when used in an intended or reasonably foreseeable manner.

20.    The asbestos and asbestos-containing products were defective when the defendants, and each of them, marketed and introduced them into the stream of commerce. Defendants, and each of them, knew that the aforementioned products would be used without inspection for defects by the user thereof.

21.    At all times herein mentioned, plaintiff and plaintiff's employer purchased from defendants, and each of them, asbestos and asbestos-containing products.

22.    At all times mentioned herein, plaintiff was unaware of the dangerous nature of the aforementioned products.

23.    The aforementioned products were used by plaintiff and those in close proximity to plaintiff in a foreseeable manner, and in the manner for which they were intended.

24.    As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed an asbestos-related disease known and designated as asbestos-related lung cancer, and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION
### (Failure to Warn)

AS AND FOR A THIRD CAUSE OF ACTION, plaintiff JOHN NEWTON JONES complains of the defendants, and each of them, and alleges:

25.    Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though fully set forth herein, each and every allegation contained in the First Cause of Action herein, except allegations pertaining negligence, and each and every allegation contained in the Second Cause of Action, except those allegations pertaining to design and manufacturing defect.

26.    At all relevant times, the asbestos and asbestos-containing products which were mined, milled, manufactured, tested, developed, processed, imported, converted, compounded, assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed, delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, and inspected by defendants, and each of them, were defective as a result of defendant's failure to warn or give adequate warning that the particular risk of developing an asbestos-related disease, and risk of death from an asbestos-related disease resulting from exposure to asbestos, rendered the product unsafe for its intended or reasonably foreseeable use.

27.    At all relevant times, the defendants and each of them had specific knowledge of these risks or could have known of these risks by the application of scientific knowledge available at the time of mining, manufacturing, selling, supplying, distributing, marketing, specifying, approving, inspecting, applying and installing the asbestos and asbestos-containing products.

28.    As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed an asbestos-related disease known and designated as asbestos-

related lung cancer, and related conditions and disabilities as previously set forth, and has

incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

### FOURTH CAUSE OF ACTION
### (Breach of Implied Warranties)

AS AND FOR A FOURTH CAUSE OF ACTION, plaintiff JOHN NEWTON

JONES complains of the defendants, and each of them, and alleges:

29.      Plaintiff, by this reference, hereby incorporates and makes a part hereof, as

though fully set forth herein, each and every allegation contained in the First Cause of

Action herein, except allegations pertaining to negligence.

30.      The defendants, and each of them, sold, supplied, delivered or otherwise

distributed to plaintiff, or to another purchaser or user who subsequently sold, supplied,

delivered or otherwise distributed to plaintiff, or to others working in close proximity to

plaintiff, the above-described asbestos and asbestos-containing products to which plaintiff

was exposed.

31.      The defendants, and each of them, knew the intended purpose of the asbestos

and asbestos-containing products prior to marketing said products, and knew or should have

known that dangerous levels of asbestos fiber would be released during the process of

applying, installing and removing these products.

32.      The defendants, and each of them, placed said asbestos and asbestos-

containing products on the market without any warning, or with an inadequate warning, and

by so doing impliedly warranted that said products were of good and merchantable quality

and fit for their intended purpose.

///

33.     The defendants, and each of them, breached the implied warranties of merchantability and fitness for an intended purpose by marketing asbestos and asbestos-containing products without a warning, or with an inadequate warning, advising plaintiff and others working in close proximity to plaintiff that dangerous levels of asbestos fiber would be released during the process of applying, installing and removing said products.

34.     As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed an asbestos-related disease known and designated as asbestos-related lung cancer, and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

### FIFTH CAUSE OF ACTION
### (Fraud)

AS AND FOR A FIFTH CAUSE OF ACTION, plaintiff JOHN NEWTON JONES complains of the defendants and each of them, and alleges:

35.     Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though fully set forth herein, each and every allegation contained in the First Cause of Action herein, except allegations pertaining to negligence.

36.     Pursuant to Section 1708 of the Civil Code of California the defendants, and each of them, owed a duty to plaintiff at all times relevant herein to abstain from injuring the plaintiff or infringing upon any of his rights.

37.     The defendants, and each of them, breached the duty they owed to plaintiff pursuant to Section 1708 of the Civil Code of California by willfully deceiving him with the intent to induce him to alter his position to his injury or risk.  The defendants, and each of them, deceived the plaintiff and committed actionable fraud pursuant to Section 1709 and

Section 1710 of the Civil Code of California.

38.     The defendants, and each of them, as more fully set forth below, suggested as fact that which was not true, and that which defendants, and each of them, did not believe was true.

39.     The defendants, and each of them, as more fully set forth below, asserted as fact that which was not true, and that which defendants, and each of them, had no reasonable grounds for believing was true.

40.     The defendants, and each of them, as more fully set forth below, suppressed facts which they were obligated to disclose, and gave information of other facts which were likely to mislead for want of communication of the undisclosed facts.

41.     The defendants, and each of them, made promises without any intention of keeping those promises.

42.     Since 1924, the defendants, and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of the plaintiff, and others in plaintiff's position working in close proximity with such materials.  The defendants, and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time, and with intent to deceive plaintiff, and others in his position, and with intent that he and such others should be and remain ignorant of such facts, and with intent to induce plaintiff and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages did do the following acts:

///

A.  Defendants, and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of plaintiff and others in plaintiff's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of the defendants herein, despite the fact that the knowledge of such hazards existed and was known to defendants, and each of them, since 1924. By not labeling such materials as to their said hazards, defendants, and each of them, caused to be suggested as a fact to plaintiff and plaintiff's employer that it was safe for plaintiff to work in close proximity to such materials when in fact it was not true and defendants did not believe it to be true;

B.  Defendants, and each of them, suppressed information relating to the danger of use of the aforementioned materials by requesting the suppression of information to the plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers and by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof, when defendants were bound to disclose such information;

C.  Defendants, and each of them, sold the aforementioned products and materials plaintiff's employer and others without advising such employers and others of dangers of use of such materials to persons working in close proximity thereto, when defendants knew of such dangers, as set forth herein, and, as set forth above, had a duty to disclose such dangers. Thereby,

defendants caused to be positively asserted to plaintiff's employer that which was not true and which defendants had no reasonable ground for believing to be true, and in a manner not warranted by the information possessed by said defendants, and each of them, to wit, that it was safe for plaintiff to work in close proximity to such materials;

D.   Defendants, and each of them, suppressed and continue to suppress from everyone, including plaintiff and plaintiff's employer, medical and scientific data and knowledge of the results of studies including, but not limited to, the information and knowledge of the contents of the Lanza report.  Although bound to disclose it, defendants, and each of them, influenced A. J. Lanza to change his report, the altered version of which was published in Public Health Volume 50 at page 1 in 1935, thereby causing plaintiff to be and remain ignorant thereof.  Defendants, and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

E.   Defendants, and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, and on behalf of defendants, and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading plaintiff and plaintiff's employer by the suggestions and deceptions set forth above in this cause of action.  The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enjoined to study the subject

of dust control.  Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and the suppression of such information from 1946 to a date unknown to plaintiff at this time;

F.   Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, and each of them, herein. Between 1942 and 1950, the defendants, and each of them, acquired medical and scientific information of the connection between inhalation of asbestos fibers and asbestos-related lung cancer, which information disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants herein.  Thereby, defendants suggested as a fact that which is not true and disseminated other facts likely to mislead plaintiff and plaintiff's employer and which did mislead them by withholding afore described medical and scientific data and by not giving plaintiff or plaintiff's employer the true facts concerning such knowledge of danger, when defendants were bound to disclose it;

G.   Defendants, and each of them, failed to warn plaintiff and plaintiff's employer that said materials were dangerous when breathed and caused pathological

effects without noticeable trauma, despite the fact that defendants possessed

knowledge and were under a duty to disclose that such material was

dangerous and a threat to the health of persons coming into contact therewith;

H.     Defendants, and each of them, failed to provide plaintiff with information

concerning adequate protective masks and devices to be used when applying

and installing the products of the defendants, and each of them, despite the

knowledge of defendants and a duty to disclose that such protective measures

were necessary and would result in injury to the plaintiff and others applying

and installing such materials if not so advised;

I.     Defendants, and each of them, concealed from plaintiff the true nature of the

industrial exposure of plaintiff, and knew that plaintiff and anyone similarly

situated, upon inhalation of asbestos would, in time, develop irreversible

conditions of either pneumoconiosis, asbestosis or asbestos-related lung

cancer, or all, and that the materials to which he was exposed would cause

pathological effects without noticeable trauma despite the fact that defendants

were under a duty to and bound to disclose it; and

J.     Defendants, and each of them, failed to provide information to the public at

large and buyers, users, and physicians employed by plaintiff and plaintiff's

employer for the purpose of conducting physical examinations of plaintiff

and others working with or near asbestos of the true nature of the hazards of

asbestos, and that exposure to these materials would cause pathological

effects without noticeable trauma to the public, including buyers, users, and

physicians employed by plaintiff and plaintiffs employer so that said

physicians could examine, diagnose and treat plaintiff and others who were exposed to asbestos, despite the fact that defendants, and each of them, were under a duty to so inform and said failure was misleading.

43.    Defendants, and each of them, having the aforementioned knowledge of facts and knowing that the plaintiff did not possess such knowledge, acted falsely and fraudulently and with full intent to cause plaintiff to remain unaware of those facts and to induce plaintiff to work with and around unsafe products in a dangerous environment, all in violation of Section 1710 of the Civil Code of the State of California.

44.    Plaintiff reasonably relied upon the misrepresentations of the defendants, and each of them, and in reliance on same continued to work with and around asbestos and asbestos-containing products. Plaintiff would have taken steps to protect his health and life had he known the facts, which were known to the defendants, and each of them, about exposure to asbestos and asbestos-containing products. Plaintiff would not have knowingly continued to work in an unsafe environment. He had no knowledge of the foregoing facts and actions of the defendants, and each of them, at the time when they were committed, and cannot be charged with knowledge or inquiry thereof.

45.    As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed an asbestos-related disease known and designated as asbestos-related lung cancer, and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

///

///

## SIXTH CAUSE OF ACTION
### (Civil Conspiracy)

AS AND FOR A SIXTH CAUSE OF ACTION, plaintiff JOHN NEWTON JONES complains of defendants, and each of them, and alleges:

46.     Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though fully set forth herein, each and every allegation contained in the First Cause of Action, except allegations pertaining to negligence and agency, and the Fifth Cause of Action

47.     At all times mentioned, the defendants, and each of them, knowingly and willfully conspired and agreed among themselves to perpetrate upon plaintiff the unlawful acts complained of in the First and Fifth Causes of Action which are incorporated herein as the Sixth Cause of Action.

48.     The defendants, and each of them, and at least one of them, did the acts herein alleged in Paragraph 42 of the Fifth Cause of Action in furtherance of the conspiracy and agreement as herein alleged, and also acted in furtherance of a conspiracy and agreement between and among the defendants, and each of them, to violate State and Federal laws and regulations, the exact nature and extent of which are unknown at this time, but known full well to defendants, and each of them.

49.     As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed an asbestos-related disease known and designated as asbestos-related lung cancer, and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

///

## SEVENTH CAUSE OF ACTION
### (Enterprise Liability)

AS AND FOR A SEVENTH CAUSE OF ACTION, plaintiff JOHN NEWTON JONES, complains of the defendants, and each of them, and alleges:

50.     Plaintiff incorporates by reference as though fully set forth herein, each and every allegation of the First, Second, Third, and Fifth Causes of Actions herein.

51.     The defendants, and each of them, mined, milled, manufactured, tested, developed, processed, imported, converted, compounded, assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed, delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, inspected and otherwise marketed asbestos and asbestos-containing products.  These products were defective and carried with them an inadequate warning, or no warning at all, regarding the health hazards associated with asbestos-exposure.  The defendants, and each of them, knew or should have known of the defective and hazardous nature of the asbestos and asbestos-containing products at the time that said products were placed in the stream of commerce.

52.     Plaintiff, at all times pertinent herein, was unaware and cannot be charged with knowledge of the health hazards associated with exposure to asbestos fibers released from the afore alleged asbestos and asbestos-containing products of the defendants, and each of them. On the other hand, the defendants, and each of them, introduced these products into the market where plaintiff worked and were in a position to prevent harmful exposures to all persons therein, including the plaintiff.

53.     Plaintiff, at all times pertinent herein, was exposed to asbestos fibers released from asbestos and asbestos-containing products which are and were fungible in color, size, shape, texture, and function.  Said products were similar in appearance and composition, and

indistinct one from the other, and through no fault of the plaintiff these products cannot be traced to a particular defendant or other entity.

54.     In this action, plaintiff has joined as defendants a substantial share of the manufacturers and suppliers of the asbestos and asbestos-containing products which comprised the relevant market within which plaintiff was exposed to asbestos fibers. At trial, plaintiff will prove the respective market share of the defendants, and each of them, during all times relevant herein. The liability of the defendants, and each of them, is proportional to their respective market share percentage, consistent with the rules set forth in Sindell v. Abbott Laboratories.

55.     As a direct and legal result of the conduct of the defendants, and each them, plaintiff developed an asbestos-related disease known and designated as asbestos-related lung cancer, and related conditions and disabilities as previously set forth, and has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## EIGHTH CAUSE OF ACTION
### (Premises Liability)

AS AND FOR AN EIGHTH CAUSE OF ACTION, plaintiff complains of the defendants, and each of them, and alleges:

56.     Defendant GEORGIA-PACIFIC LLC and PACIFIC GAS & ELECTRIC COMPANY, TRIPLE A MACHINE SHOP, INC., and TWO HUNDRED AND FIRST DOE through THREE HUNDREDTH DOE, inclusive, are the PREMISES defendants. Plaintiffs by reference hereby incorporate all allegations in the First Cause of Action as though fully set forth herein.

///

57.     Plaintiff does not know the true names and capacities of the PREMISES
DEFENDANTS sued herein as DOES 201 through 300, inclusive, and therefore sues these
defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true
names and capacities when ascertained.  Plaintiff is informed and believes and based thereon
alleges that each of the fictitiously named defendants is negligently responsible in some
manner for the occurrences herein alleged, and that plaintiff's development of asbestos-
related lung cancer as herein alleged was the direct and legal result of that negligence.

58.     The Georgia-Pacific facility at Fort Bragg, California; the PG&E facilities at
the Geysers in Northern California; and the Triple A Machine Shop facilities at Pier 64 at
the Embarcadero, and at their shipyard at Hunter's Point in San Francisco, California; and
the premises owned by doe defendants 201 through 300 are hereinafter referred to as
PREMISES.  PREMISES, as used herein in relation to the TRIPLE A MACHINE SHOP,
refers to the land-based premises owned and/or controlled by the TRIPLE A MACHINE
SHOP, as well as the interior spaces of ships where work was being performed by or for the
TRIPLE A MACHINE SHOP.

59.     At all times mentioned herein the defendants, and each of them, owned,
leased, occupied, maintained, operated or managed the premises, or in some other manner
controlled the premises, or were the architect, engineer, consulting engineer, project
coordinator, general contractor, or subcontractor who performed construction and
construction-related work, both original construction and renovation work, on said premises.

60.     Plaintiff served in the United States Navy from 1961 through 1979.  Ships he
served aboard were overhauled and underwent major repairs at Pier 64 and the Triple A
Shipyard at Hunter's Point.  Plaintiff stood watch and lived aboard ship during these

overhauls.  In this way he was regularly and routinely exposed to asbestos fibers which had been introduced into the interior spaces of the ships resulting from work performed by Triple A and its subcontractors.

Plaintiff was a turbine consultant for the Elliott Company from 1993 through 2006. During the course of performing his job duties he was regularly and routinely exposed to asbestos fibers on the premises of PG&E at the Geysers when he performed work there dismantling the facility in the early 1990's.

Moreover, while working for the Elliott Company as a turbine consultant, plaintiff was exposed to asbestos while working on and repairing a turbine at the Georgia Pacific lumber mill in Fort Bragg, California in the early 1980's.

61.    At all times relevant herein, the defendants and each of them, owed a non-delegable duty of due care which required them to exercise ordinary care to protect against an unreasonable risk of harm to persons present on the premises.  This duty was owed to JOHN NEWTON JONES.

62.    Prior to and during the time period when plaintiff was exposed to asbestos on the premises, defendants, and each of them, knew or through the exercise of reasonable diligence should have known, that exposure to asbestos fibers released from asbestos and asbestos-containing products is, and at all times pertinent herein was, associated with asbestos-related disease and death.

63.    At all times pertinent herein the defendants, and each of them, negligently maintained, managed, controlled and operated the aforementioned premises, in that they selected, specified, approved, and/or authorized the use of asbestos and asbestos-containing products; selected and/or approved the hiring of incompetent contractors and subcontractors

who performed work with asbestos and asbestos-containing products on the premises in an unsafe manner; supervised and coordinated, in an inadequate manner, the construction and renovation work performed on the premises; applied, installed, removed and/or inspected asbestos and asbestos-containing products on the premises; failed to warn of the presence of asbestos on the premises; failed to warn of the health hazards associated with asbestos exposure on the premises; failed to segregate the asbestos work from the non-asbestos work on the premises; failed to utilize dust control measures such as wet down procedures; failed to install dust removing ventilation systems; failed to require or provide dust masks and respirators on the premises; violated applicable local, state and federal codes, regulations, and statutes which were enacted to protect worker safety, the exact nature of said violations being unknown to plaintiff at the present; and/or engaged in other negligent conduct or misconduct, the precise nature of which is known to the defendants, but is unknown to plaintiff herein.

64.  At all times pertinent herein, it was foreseeable that plaintiff and others similarly situated would be present on the premises during the aforementioned construction and renovation of facilities on said premises, and that individuals so situated, including plaintiff, would thereby be exposed to hazardous levels of asbestos fiber. Despite the foreseeable nature of plaintiff's exposure to asbestos, the defendants, and each of them, failed to exercise reasonable care to prevent plaintiff's asbestos exposure on said premises.

65.  As a direct and legal result of the conduct of the defendants, and each of them, the respirable air on the premises, at all times alleged herein, was regularly and routinely contaminated with unsafe levels of asbestos fiber, which in turn was inhaled into the lungs of all persons present on the premises, including plaintiff.

66. As a further direct and legal result of the conduct of the defendants, and each of them, plaintiff developed an asbestos-related disease known and designated as asbestos-related lung cancer, and related conditions and disabilities as previously set forth, and as a further direct and legal result plaintiff has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

### NINTH CAUSE OF ACTION
#### (Negligent Hiring/Negligent Retention)

AND AS FOR A NINTH CAUSE OF ACTION, plaintiff complains of the PREMISES defendants, and each of them:

67. Plaintiff refers to and incorporates herein by reference the First through the Eighth Causes of Action of this complaint as if fully stated herein.

68. At all relevant times herein, the PREMISES defendants, and each of them, negligently hired and retained independent contractors to perform asbestos-related work, and knew or in the exercise of reasonable care and diligence should have known that the contractors, independent contractors, subcontractors, employees, manufacturers, suppliers, distributors, workers and others employed or engaged to or responsible for the manufacture, distribution, installation, inspections, repair and/or replacement of asbestos and asbestos-containing materials on the aforementioned PREMISES were incompetent and unfit to perform the duties for which they were employed, retained, hired or used, and that an unreasonable risk of harm to plaintiff and other persons on the aforesaid PREMISES would exist as a legal consequence of such employment, retention or contract. PREMISES defendants, and each of them, failed to exercise reasonable caution in selecting each of the employees and contractors who performed asbestos-related work even though said

PREMISES defendants knew or in the reasonable exercise of ordinary and reasonable care should have known that failure to choose independent contractors carefully to perform work with and around asbestos-containing materials created a dangerous and hazardous condition and unreasonable risk of harm and personal injury to plaintiff and other workers or persons so exposed while working for or in the vicinity of said negligent contractors.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## TENTH CAUSE OF ACTION
### (Vessel Owner Negligence)

AS AND FOR AN TENTH CAUSE OF ACTION, plaintiff complains of and alleges that MARINE defendants AMERICAN PRESIDENT LINES, LTD.; MATSON NAVIGATION COMPANY, INC.; and THREE HUNDREDTH AND FIRST DOE through FOUR HUNDREDTH DOE, inclusive, and each of them were at all times herein and still are corporations existing under and by virtue of the laws of a state or states unknown to plaintiff and said defendants are authorized to and are doing business in the County of Alameda, State of California, and are hereafter designated the MARINE defendants.

69.  Plaintiff does not know the true names and capacities, whether corporate, associate or individual, of defendants sued herein as DOES 301 through 400, inclusive, and each of them, and for that reason prays leave to insert the true names and capacities of said defendants when the same are ascertained.  Plaintiff is informed and believes and, therefore, alleges that each of the defendants designated herein as a DOE is negligently responsible in some manner for the events and happenings herein referred to, and proximately caused injury to plaintiff and damages to plaintiff thereby as herein alleged.

///

///

70. Plaintiff incorporates herein by reference, as though here fully set forth, and with like force and effect, the allegations contained in all the paragraphs of the First Cause of Action herein.

71. This cause arises under the General Maritime Law and the provisions of Section 5(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905, as hereinafter more fully appears. Jurisdiction is conferred upon this Court by the Savings to Suitors Clause, Article III, Section 2 of the U.S. Constitution and 28 U.S.C. § 1333(i).

72. At all times herein mentioned, plaintiff was employed aboard certain vessels which were dry docked and/or overhauled in San Francisco Bay in a capacity comprising "maritime employment" within the meaning of Sections 2, 3, and 5 of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 902, 903 and 905.

73. During the time period during which plaintiff was employed aboard said vessels, the defendants, and each of them, failed to provide plaintiff with a safe place to work in that each of the vessels was insulated with and contained asbestos materials in a condition which exposed plaintiff to asbestos dust, even though said defendants knew, or should have known, that workers, like plaintiff, would be exposed to asbestos dust while working aboard the ship under circumstances which were certain to result in injury and did cause plaintiff to become ill and suffer.

74. The foregoing acts of the defendants, and each of them, were done wantonly, willfully, oppressively and in conscious disregard of the safety of plaintiff herein, by the defendants, and each of them, in that the defendants, and each of them, prior to and at the time of the sale of the aforementioned products to plaintiff's employers or to those entities that installed and/or handled the asbestos products to which plaintiff was exposed, knew that

the foregoing materials released invisible, undetectable respirable asbestos fibers when installed or handled and that said fibers were extremely dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently warned regarding the dangerous nature of said materials, nor placed a sufficient warning on the said material or package thereof regarding said dangerous nature, nor took any action to protect those persons who foreseeably would be exposed to said asbestos products, despite knowing that persons who had no knowledge of the dangerous and hazardous nature thereof, such as plaintiff, would be exposed to and inhale asbestos fibers, and plaintiff is entitled to punitive damages hereunder.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

## ELEVENTH CAUSE OF ACTION
### (Loss of Consortium)

AS AND FOR AN ELEVENTH CAUSE OF ACTION, plaintiff CONNIE JONES complains of the defendants, and each of them, and alleges:

75.     Plaintiff CONNIE JONES brings this action on her own behalf and, unless otherwise indicated, hereinafter is referred to as "plaintiff."

76.     Plaintiff refers to and incorporates herein by reference the First through Seventh Causes of Action of this complaint.

77.     Plaintiff CONNIE JONES and her spouse JOHN NEWTON JONES are, and at all times relevant herein were, married to one another.

78.     Prior to his development of asbestos-related lung cancer, JOHN NEWTON JONES was able to and did perform his duties as a spouse. Subsequent to developing and suffering the debilitating effects of asbestos-related lung cancer, and as a direct and legal result thereof, JOHN NEWTON JONES has been and continues to be unable to perform the

necessary duties of a spouse. He is no longer able to perform the work and services usually performed by him in the care, maintenance, and management of the family home. He will be unable to perform such work, services, and duties in the future. By reason thereof, plaintiff CONNIE JONES has been deprived and will continue to be deprived of her spouse's performance of his necessary duties, all to her damage. As a direct and legal result thereof she has suffered special damages to be shown according to proof.

79.    As a further direct and legal result of the conduct of the defendants, and each of them, and JOHN NEWTON JONES'S debilitation from asbestos-related lung cancer, he is no longer able to provide the level and quality of companionship to his wife that he did before he developed this disease. As a further direct and legal result of this debilitation, plaintiff CONNIE JONES has suffered and in the future will continue to suffer the loss of her husband's ability to provide love, companionship, comfort, affection, society, solace, and moral support, all to her damage. As a direct and legal result she has suffered a pecuniary loss in excess of $50,000.00 in addition to her special damages.

WHEREFORE, plaintiff CONNIE JONES prays judgment as follows:

1.    General damages in an amount in excess of $50,000.00 in accordance with the proof.

2.    Damages for fraud and conspiracy in an amount in excess of $50,000.00;

3. Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with the proof;

4.    Special damages in accordance with the proof;

5. Prejudgment interest and post-judgment interest in accordance with law;

6. Costs of suit; and

7. Such other and further relief as the Court deems just and proper.

WHEREFORE, plaintiff JOHN NEWTON JONES prays judgment as follows:

1. General damages in an amount in excess of $50,000.00 in accordance with the proof;

2. Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with proof;

3. Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with the proof;

4. Special damages in accordance with the proof;

5. Prejudgment interest and post-judgment interest in accordance with law;

6. Costs of suit; and

7. Such other and further relief as the Court deems just and proper.


Dated: August 2, 2017                                  SHINGLER LAW


                                                   By: _____
                                                       Ronald J. Shingler, Esq.
                                                       Richard A. Brody, Esq.
                                                       Attorneys for Plaintiffs